Citation Nr: 1755084 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-16 295 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUE

Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

The Veteran represented by: Robert V. Chisholm, Esq.


WITNESSES AT HEARING ON APPEAL

The Veteran and Spouse


ATTORNEY FOR THE BOARD

Grace J. Suh, Associate Counsel


INTRODUCTION

The Veteran served on active duty with from February 1966 to January 1968, during the Vietnam Era.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boise, Idaho.

In July 2013, the Veteran and his spouse testified before the undersigned Veterans' Law Judge at a Board videoconference hearing; a transcript has been associated with the claims file.

In January 2016, the Board issued a decision, which in pertinent part, denied the Veteran's claim for TDIU. He appealed that decision to the United States Court of Appeals for Veterans' Claims (Court). By a March 2017 Memorandum Decision, the Court vacated the Board's January 2016 decision with respect to the issue of TDIU and remanded the matter for further action consistent with its decision.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). The VA will notify the Veteran if further action is required.


REMAND

The Veteran contends that he has been unable to obtain or maintain substantially gainful employment due to his service-connected disabilities since September 2009. See March 2011 Veteran's Application for Increased Compensation Based on Unemployability.

The Board observes the Veteran is service-connected for penile fissures, penile adhesion, major depression, coronary artery disease, bilateral hearing loss, tinnitus, scars on his penis, and scars on his left leg. See February 2016 Rating Code Sheet.

In addition to the above, the Veteran also suffers from non-service-connected disabilities, including a torn left shoulder rotator cuff as well as a left knee and back conditions. See May 2014 Letter from the Veteran; January 2015 Letter from the Veteran; June 2015 Letter from the Veteran.

In support of this claim, the Veteran's representative submitted an August 2017 TDIU Vocational Assessment Report authored by Z.T.F, concluding the Veteran's service-connected disabilities prevented him from obtaining and maintaining substantially gainful employment and has done so since 2009. 

Even though Z.T.F. confirmed reviewing the Veteran's claim file, Z.T.F. did not address his lay statements contained in the May 2014, January 2015, or July 2015 letters he submitted. Significantly, while Z.T.F. identified each of his service-connected disabilities, Z.T.F. did not acknowledge his left shoulder, left knee, or back conditions whatsoever. This is problematic because in producing the August 2017 TDIU Vocational Assessment Report, Z.T.F. relied on his self-reported physical limitations; lifting/carrying no more than a half-gallon, standing no more than 15 minutes due to fatigue, walking no more than 10 to 15 minutes due to fatigue, shortness of breath, and difficulty hearing. Despite Z.T.F.'s indication that he attributed these physical limitations to his service-connected disabilities alone, the Board observes many of the limitations described potentially involve his left shoulder, left knee, and back.

Furthermore, in the August 2017 TDIU Vocational Assessment Report, Z.T.F.'s recitation of the pertinent evidence ends in March 2014. Even then, while Z.T.F. discussed the March 2014 Mental Disorders VA Examination Report, Z.T.F. did not touch on the March 2014 Male Reproductive System Conditions VA Examination Report, Ischemic Heart Disease VA Examination Report, or General Medical VA Examination Report. These VA Examination Reports contradict Z.T.F.'s findings. 

For example, in the March 2014 Ischemic Heart Disease VA Examination Report, a VA examiner documented the Veteran's express denial of any cardiac symptoms other than getting tired more quickly than he used to. Even so, he admitted that he continued to do maintenance work on his house and land; six acres. Id.; see also March 2014 General medical VA Examination Report. For instance, he cut his own firewood, mowed the grass, and plowed snow as needed. Based on his lay statements, the VA examiner determined his described symptoms of dyspnea and fatigue with activity greater than seven to 10 metabolic equivalents, which is consistent with activities such as climbing stairs quickly as well as moderate bicycling, sawing wood, jogging at six miles per hour.

Overall, as it pertained to the physical aspect, in the March 2014 General Medical VA Examination Report, the same VA examiner concluded the Veteran was fully capable of engaging in physical or sedentary work. This conclusion was supported by his own assertion that he continued to undertake the strenuous work delineated above. Of note, he relayed that he engaged in physical labor of this nature on a daily basis. 

Z.T.F. specifically disagreed with the March 2014 Mental Disorders VA Examination Report's finding that psychologically, the Veteran remained capable of substantially gainful employment. The VA examiner concluded that although his concentration, persistence, and pace could be expected to be mildly impaired in a work environment as a result of his depression, he remained capable of completing complex tasks. 

In contrast, Z.T.F. opined the distraction caused by the pain and numbness of the Veteran's penile condition, in conjunction with his depression would hinder his ability to complete complex and simple tasks. This opinion is inconsistent with the March 2010 Mental Disorders VA Examination Report, in which the Veteran acknowledged significant pain relief following the penectomy and his wife's testimony at the July 2013 Board hearing that he no longer experienced pain due to his penile conditions. Notably, the VA examiner unambiguously found there was no impact on his ability to work in the March 2014 Male Reproductive System Conditions VA Examination Report. 
Finally, the August 2017 TDIU Vocational Assessment Report does not sufficiently address the effects of the Veteran's medications. In that regard, Z.T.F. documented his report that his medications for coronary artery disease caused drowsiness and soreness in his legs. However, the Board notes in the June 2015 letter, he relayed taking pain medication on a daily basis for his back condition. Further, while that Veteran's wife attributed the fact that he immediately fell asleep after doing yard work outside to his medications, the Board notes his yard work consists of strenuous tasks. See July 2013 Board Hearing Transcript at 11. Therefore, it is unclear what, if any, occupational impairment is caused by the medications for his service-connected disabilities.

In light of the above, the Board finds the August 2017 TDIU Vocational Assessment Report is inadequate to adjudicate this claim. 

As there is no singular VA examination of record addressing the occupational impairment resulting from the combination of the Veteran's service-connected disabilities, the Board finds a remand is appropriate in order to obtain one.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for a VA examination with an appropriate medical professional to determine the occupational impairment resulting from his service-connected disabilities.

After reviewing the complete record from September 2009 to the present, the examiner should:

a. Discuss the impact of his service-connected disabilities in terms of his ability to engage in physical and sedentary employment.

b. To the extent possible, distinguish between the occupational impairment caused by his service-connected and nonservice-connected disabilities, to include the side effects of all medications prescribed. If not possible, indicate the same and explain why.

c. Discuss whether the severity of the occupational impairment resulting from his service-connected disabilities has worsened at any time between September 2009 and the present.

d. In rendering an opinion, the examiner is asked to discuss the Veteran's and his wife's pertinent lay statements. This includes their testimony contained in the July 2013 Board Hearing Transcript as well as the lay statements contained in his November 2009, September 2010, October 2010, May 2011, May 2014, January 2015, and June 2015 letters.

e. The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached. 

2. Thereafter, readjudicate the issue on appeal. If the determination remains unfavorable to the Veteran, he and his representative should be furnished a supplemental statement of the case which addresses all evidence associated with the claims file since the last statement of the case. He and his representative should be afforded a reasonable time period in which to respond.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (West 2014).




_________________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (West 2014), only a decision of the Board is appealable to the Court. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of this appeal. 38 C.F.R. § 20.1100(b) (2017).